[No. 26559. *En Banc.* February 3, 1937.] .

THE STATE OF WASHINGTON, *on the Relation of E. Schoenwald et al., Plaintiff,* v. THE SUPERIOR COURT FOR WHATCOM COUNTY, *Ralph Olson, Judge, Respondent.*[1]

[1]Reported in 64 P. (2d) 791.

*John J. Kennett, Revelle, Revelle & Kells,* and *Edward M. Hay,* for relators.

*Allen, Froude & Hilen,* for respondent.

MAIN, J.—This is an application in this court for a writ of mandate directed to the superior court of Whatcom county.

An action is pending in King county in which one E. Schoenwald is plaintiff and the Diamond K Packing Company, a corporation, is defendant, which case is set for trial February 8, 1937. In that action, the plaintiff seeks an accounting from the defendant as to the number of fish caught in a certain fish trap in Alaska, which was jointly owned by the parties but operated by the defendant. The demand for an accounting covers the fishing seasons of 1934, 1935, and 1936. In the complaint in the action, it is alleged that the fish actually taken from the trap far exceed the number of those accounted for by the defendant, and that the defendant is in exclusive control of the books and records concerning the catch from the trap and the cost of operating and maintaining the same.

One Lundberg N. Nelson, who resides in the city of Bellingham, in Whatcom county, this state, was in charge of the trap for the defendant for the seasons

mentioned. The plaintiff gave notice that the deposition of Nelson would be taken before a notary in Bellingham on January 14, 1937, and caused a subpoena *duces tecum,* duly issued by the notary, to be served on Nelson in Bellingham on January 7, requiring him to appear at the time and place fixed for the deposition. The subpoena, among other things, contained the following:

"YOU ARE FURTHER COMMANDED to bring with you your book and records containing estimates made by you of the number of fish caught in the Snow Pass Trap (Diamond K No. 5.) during the fishing seasons of 1934, 1935 & 1936."

The witness appeared at the time and place fixed and was examined under oath. He admitted that he was in charge of the trap for the three seasons in question; that he kept a record of his estimates of the number of fish lifted from the trap in 1934 on a piece of paper that he placed in a notebook. He denied that he had ever, at any time during the seasons of 1935 and 1936, made any estimates as to the number of fish taken from the trap, and also denied that he had made any record for those years. During the examination before the notary, the witness testified, with reference to the piece of paper, that he did not know when he last saw it; that he made no search for it after the subpoena was served upon him; and that he did not know whether he had it or not. He was asked to produce the record for that year, and was also asked to produce the book for the seasons of 1934, 1935, and 1936; and, as above stated, denied that he had ever kept such a record.

When it appeared that the witness would not produce the records called for by the subpoena *duces tecum,* the plaintiff requested the notary to discontinue taking the deposition until a petition, signed by

the notary, could be presented to the superior court of Whatcom county, requesting that court to hear the testimony of witnesses who had seen the book in the witness' possession. The hearing was adjourned, and the parties went before the superior court. When they appeared, the plaintiff asked to submit sworn testimony in support of the statement that he had witnesses in court who would testify that they had seen the book above mentioned. After argument by counsel for the respective parties, the court declined to hear the witnesses and try out the question of whether the witness had possession or control of the paper and book mentioned. The following occurred:

"MR. KENNETT [attorney for plaintiff]: I understand that Your Honor declines to hear the notary's transcript of what transpired, and declines to hear the testimony of the witnesses which the plaintiff wishes to produce as to the existence of this book? THE COURT: I think the ruling would so indicate, that at this time, from the statement counsel have both made, and you have filed a petition here, and the ruling of the court is that, upon your statement and the petition filed, the petition will be denied."

Shortly after this, the application above mentioned was made here for the purpose of requiring the superior court of Whatcom county to hear the evidence and determine the question as to whether, as stated, the piece of paper and the book were in the possession of the witness Nelson or under his control.

The proceeding which was adopted to take the matter before the superior court was that provided for in sections 1235 to 1238, inclusive, of Remington's Revised Statutes. These sections authorized the court to compel the witness to appear and give his oral deposition before the officer therein named, and also authorized the court to compel the witness to bring with him books and documents under his control,

which have been called for by a subpoena *duces tecum.*
*In re Bolster,* 59 Wash. 655, 110 Pac. 547, 29 L. R. A.
(N. S.) 716. Even though the record kept on the piece
of paper was Nelson's private record, as he says,
this does not excuse him from producing it if it is
material evidence. *State ex rel. Spokane & Eastern
Trust Co. v. Superior Court,* 109 Wash. 634, 187 Pac.
358, 9 A. L. R. 157.

In the case now before us, there cannot be any
question but that the piece of paper and the book,
if they exist, are very material evidence upon the
issues presented in the action in King county. Upon
the showing made when the application was presented
to the superior court, it was the duty of that court
to hear the evidence and determine whether the piece
of paper and book were in the possession of Nelson
or under his control and, if so, order them produced.
On the other hand, if, after hearing the evidence, the
court was of the view that they were not in the pos-
session or control of Nelson, he should be exonerated.
*Holly Manufacturing Co. v. Venner,* 74 Hun 458, 143
N. Y. 639, 37 N. E. 648; *Shull v. Boyd,* 251 Mo. 452,
158 S. W. 313.

The question of contempt does not arise until after
the witness has been ordered to produce something
and he has refused. Merely because the witness, in
effect, denies the existence of the paper and unequivo-
cally denies the existence of the book, the court is not
required to refuse to order him to produce them. The
decision of the matter should be based on the evidence
produced by the respective parties. *People ex rel.
Germania Fire Ins. Co. v. Circuit Judge,* 41 Mich.
258, 49 N. W. 921.

It is said, however, that mandamus is not the
proper remedy, inasmuch as the trial court exercised
its judgment based upon the petition and the statement

of counsel. Rem. Rev. Stat.. § 1014 [P. C. § 8187], provides that the writ may be issued by any court, except a justice's or police court, to compel the performance of an act which the law especially enjoins as a duty resulting from an office. Section 1015 [P. C. § 8189] provides that:

"The writ must be issued in all cases where there is not a plain, speedy and adequate remedy in the ordinary course of law. . . ."

It will be noted that the first of these sections authorized the writ requiring the performance of a duty resulting from an office, and, applying that to the present case, the superior court of Whatcom county did not perform the duty which it should have performed under the law, as above pointed out, when the application was made.

The second of the sections, it will be observed, provides that the writ must be issued in all cases where there is not a plain, speedy and adequate remedy in the ordinary course of law. In the matter now presented, the case in which the evidence sought is to be used is set for trial, as above stated, February 8, 1937. It would seem that the intervening time would be wholly inadequate for the plaintiff in the case to get the relief which he seeks in time for the trial "in the ordinary course of law."

In the case of *State ex rel. Hayashi v. Ronald,* 134 Wash. 152, 235 Pac. 21, after the issues in an action had been joined, the plaintiff propounded written interrogatories and the request for a commission to take a deposition in a foreign country. The court refused the commission on the ground that "the interrogatories, each and all, were and are immaterial and irrelevant to the issues of this cause of action." Application was made to this court for a writ of man-

damus, and granted. With reference to the propriety of the writ, the court there said:

"The defendant in this court further contends that mandamus is not a proper remedy in the present situation. His argument is that the granting of a commission to take a deposition is discretional with a judge of the superior court, under Rem. Comp. Stat., § 1240 [P. C. § 7725], and will not be interfered with or controlled by mandamus. Without discussing the statute and the cases cited by counsel, we think it sufficient to say that having seen that the interrogatories proposed to be answered by the non-resident witness are proper and material, that the matter is not discretional with the trial court, and that the petitioner here is entitled to a mandamus to compel the lower court to grant the commission. 8 R. C. L., Depositions, § 18. In this same connection it is further said by the above mentioned authority:

" 'Assuming that an order of court denying an application for a commission is appealable, still the remedy by appeal is not exclusive, as it would be inadequate.' "

While the facts in that case differ somewhat from the facts in the case now before us, the underlying principle is the same. There, the court, in passing upon the materiality of the written interrogatories, exercised its judgment, as it is claimed the trial court did in this case. If mandamus was a proper remedy in that case, as the court distinctly held, it necessarily follows that it is a proper remedy in this case.

The writ will issue.

BEALS, BLAKE, HOLCOMB, GERAGHTY, TOLMAN, and ROBINSON, JJ., concur.

MILLARD, J. (dissenting)—A writ of mandamus will issue from this court to the superior court to compel the latter to exercise its judicial functions and powers, but not to direct or control their exercise. We have

consistently held that mandamus does not lie to control the exercise of judicial discretion. Of course, the writ will issue to compel the superior court to act if it holds a cause in abeyance and refuses to decide one way or the other, but the writ will not run to compel the superior court to decide a matter one way or the other.

The statement of facts discloses that Nelson (whom the relators seek to compel, by contempt proceedings, to produce a record desired by relators) testified, in effect, before the notary, that, during 1934, he kept a loose-leaf paper record, and that, at the time of the hearing before the notary, which was more than two years subsequent to the time that he made that record, he did not know where that loose-leaf paper record was, and that he had made no search for it. It fairly appears from his testimony that the witness had no recollection of having retained that loose-leaf paper record, and that he had no idea as to its whereabouts.

Nelson testified that the record he kept in 1934 was a personal record of his own and had nothing to do with the defendant's business; that is, in 1934, the witness kept an estimate of the catch of the trap for his own personal information on a loose-leaf paper which he put in a notebook in his possession, and that at the end of the season it had no use; that, so far as any record of the catch in 1935 and 1936 is concerned, he never made any such record, nor did he have any such book as is referred to by the relators. This is not a case where the witness admitted he had a book and refused to produce it. He testified positively that he never had such a book as that which witnesses for the relators would testify they had seen in his possession.

The court ruled upon the matter on its merits. It stated that, if the offer of proof by counsel for the

relators were given full credence, nevertheless the court would still deny the petition to require the witness to produce the questioned documents or be adjudged in contempt of court. This clearly appears from the statement of facts, the pertinent portion of which reads as follows:

"MR. KENNETT: I may want to apply for a writ of some kind; I don't know, and I wish to be frank with the court. My statement was only a statement of what I intended to prove by the witnesses here and by the notary's transcript. I am asking Your Honor for the right to submit the records of the notary public and the testimony of these two witnesses who were on this trip with him last summer. Now, if the court is denying me that right, I think it should be clear and unequivocal."

The court replied:

"I am taking your opening statement of what you would prove under the allegations of your petition, and giving your statement full credence as to the development of proof, I think that the petition should be denied."

Clearly, the trial court denied the petition of the relators upon the offer of proof as made by counsel for the relators in the opening statement, and thereupon entered a decision on the merits. Surely, it cannot be logically held that any basis exists for an order of this court directing the trial court to exercise its discretion.

The issuance of the writ in this case is a futile gesture. When the trial court hears, as it is required to do by the mandate of this court, the witnesses of relators and the testimony of Nelson, can we require the court to believe the one and refuse to believe the other? The credibility of the witnesses is for the trial court, and, when the trial court accepts the testimony of Nelson as true, that he kept a record in 1934, which

he does not now have, and that he never kept a record in 1935 and 1936, can we, in the face of our repeated holdings, say, on review of the proceeding required by the mandate, that the trial court should have believed relators' witnesses and not have believed witness Nelson?

As said before, the trial court cannot be required by our mandate to believe the testimony of the witnesses on one side and not to accept as true the testimony of witnesses on the other side. The acceptance as true by the trial court of the testimony of Nelson will demonstrate the prodigality of the issuance of the writ.

STEINERT, C. J., concurs with MILLARD, J.